Michael INDELICATO, Plaintiff,

v.

Hector SUAREZ, Case Manager, Christine Dynan, CMC Donald Parks, Warden, Defendants.

No. 00 CIV. 8993 (VM)(THK).

United States District Court, S.D. New York.

June 18, 2002.

Michael Indelicato, Brooklyn, OH, Plaintiff pro se.

Danielle Andree Gentin, U.S. Attorney's Office, New York City, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Michael Indelicato ("Indelicato"), appearing *pro se*, brings this action for injunctive relief and monetary damages under 42 U.S.C. § 1983 and the principles enunciated in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Indelicato alleges that certain corrections officers at the New York Metropolitan Correctional Center ("MCC") violated his constitutional rights on September 14, 2000 by placing him on "refusal status"[1] when he declined to pay an increased contribution to the Inmate Financial Responsibility Program ("IFRP"), 29 C.F.R. §§ 525.10–.11. (*See* Compl. § VI.)

Defendants Hector Suarez, Indelicato's case manager; Christine Dynan, the Case Manager Coordinator; and Donald Parks, the Prison Warden (collectively "Defendants"), move for dismissal pursuant to Federal Rule of Civil Procedure 12(c) on the grounds that Indelicato failed to: (1) exhaust his administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), prior to filing his claim; (2) adequately plead a claim under *Bivens*; and (3) exhaust his administrative remedies, as required by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a), to the extent that Indelicato's claim can be construed as a claim under that statute. Defendants also move to amend their an-

swer to the complaint to include an affirmative defense of qualified immunity for defendants Suarez and Dynan. Indelicato moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). For the reasons set forth below, Indelicato's motion is denied and Defendants' motions are granted.

### I. FACTUAL BACKGROUND

The IFRP is designed to help inmates pay off their outstanding debts. *See* 29 C.F.R. §§ 525.10–.11. In the program, prison staff help inmates develop financial plans and monitor the inmates' progress in meeting their financial obligations. *Id.* On September 13, 2000, Suarez and Dynan informed Indelicato that unless he increased his monthly contributions to the IFRP, he would be placed on "refusal status." (Compl.§§ IV(1)-(3).) Indelicato objected, claiming that rather than refusing to participate in the program, he was merely refusing to pay the newly increased amount. (Compl.§ IV.) The following day, Indelicato was again informed both in person and in writing that if he did not pay the new amount, he would be placed on "refusal status." (*Id.* at § IV(1), (3).)

In an effort to pursue the inmate remedy process, Indelicato asserts that he requested an Administrative Remedy Request Form from Suarez three times but never received one. (Compl.§§ II, V(e).) Suarez told him to get the form from his unit counselor, who was away for two weeks. (Plaintiff's Answers to Interrogatories and Request For Documents By Defendants ("Pl.'s Answers") ¶ 8(e), attached to Plaintiff's Declaration, dated April 4, 2002 ("Pl.'s Decl."), Ex. C.) Indeli-

---

**1.** When the Bureau of Prisons ("BOP") places an inmate on "refusal status," it institutes various sanctions such as reduced pay, low housing status and restricted work assignments. *See* 29 C.F.R. § 525.11.

cato then commenced this action, filing a complaint dated September 16, 2000. He allegedly tried to submit the administrative remedy form again on February 11, 2001, after he was transferred to the Elkton BOP facility, but claims that his unit counselor refused to file the form because she was trying to work out an informal resolution. (Plaintiff's Memorandum in Opposition of the Defendant's Motion for Judgment on the Pleadings ("Pl.'s Mem.") at 4–5.) He subsequently submitted the form on February 5, 2002, after he was transferred to the BOP's Metropolitan Detention Center in Brooklyn. (*Id.*)

## II. DISCUSSION

### A. LEGAL STANDARD

When examining a motion for judgment on the pleadings, the Court must accept all well-pleaded allegations of the non-movant as true and draw all reasonable inferences in his favor. *See Sheppard v. Beerman,* 94 F.3d 823, 827 (2d Cir.1996). Granting such a motion is proper only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* Because Indelicato is acting *pro se* in this matter, the court must "construe the complaint liberally such that the strongest possible argument is raised" in his favor. *Richardson v. Hillman,* 201 F.Supp.2d 222, 226–27 (S.D.N.Y.2002); *see also Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Moreover, in deciding a motion to dismiss involving a *pro se* plaintiff, the court may look beyond the complaint to the plaintiff's opposition papers. *Pagan v. New York State Div. of Parole,* No. 98 Civ. 5840, 2002 WL 398682 (S.D.N.Y.2002). Finally, when deciding such a motion, the court may consider any documents incorporated into a complaint by reference or upon which the plaintiff relied in drafting his pleadings. *See Cortec Indus., Inc. v. Sum*

*Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991).

### B. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING A BIVENS CLAIM

Defendants move to dismiss this action because Indelicato failed to exhaust his administrative remedies before filing a complaint in this Court. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under ... Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). In *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 992, 152 L.Ed.2d 12 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits related to prison conditions. This requirement extends to cases, such as this one, where a plaintiff seeks a remedy not available through the administrative process, such as monetary damages. *See Booth v. Churner,* 532 U.S. 731, 733–34, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (holding that exhaustion is required under the PLRA even if the plaintiff seeks only money damages and money damages are not available as relief). The purpose of the exhaustion requirement is to improve prison administration, filter out frivolous claims, and clarify the contours of controversies for cases that are ultimately brought to court. *Porter,* 122 S.Ct. at 988.

In the instant case, Indelicato was required to seek administrative relief under the BOP's four-step Administrative Remedy Program (the "ARP"). Under the ARP, an inmate must first attempt to informally resolve his claims. *See* 28 C.F.R. § 542.13(a). Second, if dissatisfied with the informal resolution, the inmate must use a designated form to submit a written "Administrative Remedy Request" to the Warden within twenty days of the events

triggering the complaint. *See* 28 C.F.R. § 542.14(a). Third, if the formal request is denied, the inmate must appeal to the appropriate BOP Regional Director. *See* 28 C.F.R. § 15(a). Finally, an inmate must appeal a negative decision by the BOP Regional Director to the BOP's Office of General Counsel within thirty days of the date of the Regional Counsel's decision. *Id.* The inmate may file an action in federal court only after these four steps have been completed.

Indelicato does not allege that he completed the ARP's four steps before filing his complaint in this Court.[2] Rather, Indelicato contends that he exhausted all of his available remedies after he completed step one, because the grievance form required in step two was not available to him. (Compl.¶¶ 2, V(e); Pl.'s Mem. at 4–5.) An inmate may defeat a motion to dismiss even if he has not technically exhausted his administrative remedies when he has made a "reasonable attempt" to do so, "especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts." *O'Connor v. Featherston*, No. 01 Civ. 3251, 2002 WL 818085, at *2 (S.D.N.Y. April 29, 2002). The question before this Court, therefore, is whether Indelicato made a "reasonable effort" to

exhaust his administrative remedies before filing his claim.

Indelicato claims that: (1) he made a reasonable effort by requesting the step-two grievance form three times; and (2) because his requests were denied, he had no available administrative remedies.[3] Inmates who have made significant efforts to obtain administrative relief have exhausted their administrative remedies, even when they have not pursued the proper procedure. *See O'Connor*, 2002 WL 818085, at *2–3 (holding that plaintiff who was denied requests for forms by unhelpful prison officials but went on to write letters, file and appeal a FOIA request, and make several other inquiries, had made a reasonable attempt to exhaust his administrative remedies); *Rodriguez v. Hahn*, No. 99 Civ. 11663, 2000 WL 1738424, at *2 (S.D.N.Y. Nov. 22, 2000) (holding that a *pro se* plaintiff who was unfamiliar with the process and failed to file a grievance form, but wrote numerous letters and memoranda to various prison officials had made a reasonable attempt to exhaust his administrative remedies). Denial of forms, however, does not itself constitute a denial of remedies. *See M.F. v. Reish*, No. 95 Civ. 4904, 1996 WL 221601, at *3, n. 4 (S.D.N.Y. May 1, 1996) (holding that a plaintiff who failed to file a step two form had not exhausted his

---

**2.** The fact that Indelicato eventually submitted the form required under step two is irrelevant to the present inquiry because he did so only *after* he filed his complaint with this Court in September 2000. *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir.2001) (holding that administrative remedies must be exhausted *prior to* filing a claim in court); *Fletcher v. Haase*, No. 99 Civ. 9549, *slip op.*, 2002 WL 313799, at *1 (S.D.N.Y. Feb. 27, 2002) (same). Moreover, even if Indelicato's subsequent submissions were relevant to this case, they would be insufficient to demonstrate exhaustion of administrative remedies because they were untimely, coming after the twenty-day deadline for step two filings specified in

the BOP's four-step procedure. *See* 28 C.F.R. § 542.14(a).

**3.** In his Affidavit dated April 4, 2002, attached to Plaintiff's Declaration ("Pl.'s Aff."), Ex. G., Indelicato also claims that any attempt to file a grievance against his unit team *through* his unit team would have been futile. The "alleged ineffectiveness of the administrative remedies that are available, however, does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so." *Giano v. Goord*, 250 F.3d 146, 150–51 (2d Cir.2001). Thus, the fact that Indelicato believed that nothing would come of his grievance is not relevant to this inquiry.

administrative remedies and noting that the proper procedure after being denied step two forms is to complain to the General Counsel).

In the instant case, it appears that Indelicato did not pursue his administrative remedies in the seventeen days he had remaining after Suarez denied him the form. *See* 28 C.F.R. § 542.14(a) (stating that the deadline for filing a step two grievance form is twenty days after the events in question). He made no attempt to request the form from his unit counselor after she returned from her two week absence, even though he would have had time to do so. Instead, he filed a complaint in this action dated September 16, 2000, which was only two days after he was placed on refusal status. Accordingly, the Court concludes that Indelicato failed to make a reasonable effort to exhaust his administrative remedies prior to commencing litigation because he had adequate time to request the form from his unit counselor or to complain to the General Counsel of the BOP. *See Reish,* 1996 WL 221601, at *3, n. 4. Because the remedies are now time-barred, this action is dismissed with prejudice. *See Burns v. Moore,* No. 99 Civ. 0966, *slip op.,* 2002 WL 91607, at *7 (S.D.N.Y. Jan. 24, 2002) (holding that because plaintiff no longer has available administrative remedies, his action must be dismissed with prejudice).

## C. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES PRIOR TO FILING A CLAIM UNDER THE FTCA

Even if the Court construes Indelicato's complaint as asserting a claim under the FTCA, the Court finds that he has failed to adequately plead such a claim. To file a

claim under the FTCA, a claimant must first present the claim to the appropriate federal agency, in this case the BOP, and receive a written denial. *See* 28 U.S.C. § 2675(a); *see also McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (holding that "the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"); *Pender v. United States,* 63 F.Supp.2d 473, 474 (S.D.N.Y.1999) (dismissing a case in which plaintiff failed to allege that he exhausted his administrative remedies prior to filing an FTCA claim in court). Indelicato does not allege that he ever presented or attempted to present such an FTCA claim to the BOP. Accordingly, the Court finds that Indelicato has not exhausted his administrative remedies for the purposes of the FTCA and this claim is dismissed without prejudice.[4]

## III. CONCLUSION AND ORDER

For the reasons set forth above, it is hereby

**ORDERED** that Defendants' motion for judgment on the pleadings is GRANTED with prejudice with respect to Indelicato's *Bivens* claim; and it is further

**ORDERED** that Defendants' motion for judgment on the pleadings is GRANTED without prejudice with respect to Indelicato's FTCA claim; and it is further

**ORDERED** that Indelicato's motion for summary judgment is DENIED.

**SO ORDERED.**

---

4. Because the Court grants Defendants' motion for judgment on the pleadings, it is unnecessary to consider their motion to amend their answer to include the affirmative defense of qualified immunity.