**Shawn HAMLETT, Plaintiff,**

v.

**Nilam SRIVASTAVA, et al., Defendants.**

**No. 05 CIV 6078.**

United States District Court, S.D. New York.

July 20, 2007.

Shawn Hamlett, Clearwater, FL, Pro se.

Martin John Bowe, Jr., NYC Law Department, John Peter McNaboe, Heidell, Pittoni, Murphy & Bach, LLP, New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Pro Se plaintiff Shawn Hamlett ("Hamlett") brought this action alleging that defendants violated his First Amendment right to the freedom of religion by failing to provide him a vegetarian diet during his incarceration at the Rikers Island prison facility of the City of New York ("Rikers Island"). Defendants, who were food services, health care and grievance procedures officials at Rikers Island involved in the alleged wrongful action (collectively "Defendants"), move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Hamlett has not filed opposition to the motion, although on two occasions the Court granted him extensions to respond, the latest of which expired on June 29, 2007. For the reasons discussed below, Defendants' motion is GRANTED.

### I. FACTS

Hamlett alleges in his complaint that, following his arrest on April 7, 2005 and incarceration at Rikers Island, he informed prison medical staff that, because of his religion as a Seventh Day Adventist, he

did not eat meat or meat bi-products, and that he was allergic to those foods. By Hamlett's account, he was told that the Department of Corrections did not provide vegetarian meals under any circumstances, and that when he protested that he had nothing else to eat, he was told to try eating meat, which he did. As a consequence, through May and June 2005 he allegedly became seriously ill with rashes, headaches, vomiting, diarrhea and other symptoms. Hamlett claims that it took two months for prison officials to arrange for him to see a dietician. By reason of the injuries he allegedly sustained, Hamlett asserts that Defendants violated his First Amendment right to freedom of religion.

Hamlett claims that he filed an inmate grievance form with prison officials regarding his complaint but refused to sign it because defendant Keith W. Guerrant ("Guerrant"), the officer in charge of the administrative procedure, in order to minimize the seriousness of Hamlett's allegation, rewrote it to omit the important fact concerning Hamlett's claimed allergy to meat. With his complaint in this action, Hamlett attached a copy of an inmate grievance form dated May 25, 2005 which is not signed by him.

In support of Defendants' motion for summary judgment, Guerrant submitted a declaration in which he outlines the five steps required to complete the grievance procedure, and states that Hamlett's grievance form, filed on May 19, 2005, had a box checked to indicate that the inmate agreed to have the complaint written out for him by staff. (*See* Declaration of Keith W. Guerrant in support of City Defendants' Motion for Summary Judgment, dated February 8, 2007 ("Guerrant Dec.").) Guerrant interviewed Hamlett on May 25, 2005 and noted in his investigation report that the grievance concerned Hamlett's diet and alleged allergy to meat and meat

bi-products, and that Hamlett requested vegetarian meals. Guerrant prepared Hamlett's grievance form, noting on it Hamlett's statements that he was a Seventh Day Adventist who did not eat meat and that he was requesting a vegetarian diet. Guerrant then informed the prison's dietician, defendant Nilam Srivastava ("Srivastava"), of the medical basis for Hamlett's request and arranged for Srivastava to interview Hamlett. According to Guerrant, Hamlett refused to sign the grievance form, did not request a hearing with the Inmate Grievance Resolution Committee ("IGRC"), to which the form advised complainants they were entitled, and did not subsequently seek to re-file his grievance.

Defendants assert several grounds in support of their motion: that (1) Hamlett failed to exhaust available administrative remedies; (2) the complaint does not state a viable First Amendment claim; (3) Defendants' actions do not amount to deliberate indifference of serious medical need; and (4) they are protected by qualified immunity. Because the Court finds that Hamlett's failure to exhaust administrative remedy is dispositive of this dispute, it grants Defendants' motion on this basis without addressing the other grounds.

## II.  *STANDARD OF REVIEW*

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

The party seeking summary judgment bears the burden of showing that there are no genuine issues of material fact to be tried. *Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 202 (2d Cir.1995). Once the moving party has made this showing, the opponent must present "significantly probative supporting evidence" of a disputed fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing summary judgment must come forward with materials setting forth specific facts showing that there is a genuine issue of material fact; he cannot defeat summary judgment by relying on the allegations in his complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996).

That a party appears pro se, though entitled to some latitude not accorded to litigants represented by counsel, does not relieve him of the obligation to respond to a motion for summary judgment with sufficient admissible evidence. *See Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003). Nor does it excuse him from meeting deadlines imposed by the Court to file opposition. *See Wilson v. Pessah,* No. 05 CV 3143, 2007 WL 757993, at *2 (E.D.N.Y. March 8, 2007).

### III. *DISCUSSION*

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C § 1997, bars litigation in federal courts by inmates complaining about prison conditions pursuant to 42 U.S.C. § 1983 "until such administrative remedies as are available are exhausted." *Id.* § 1997e(a). This procedure is mandatory, requiring a plaintiff to pursue all available administrative review to the highest level of authorized officials before filing a federal action, and applies "to all inmate suits about prison life, whether they involve general circumstances or particular

episodes...." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Braham v. Clancy,* 425 F.3d 177, 181 (2d Cir.2005); *see also Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004).

In *Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004), the Second Circuit articulated the inquiry courts must conduct in reviewing a defense of a prisoner's failure to exhaust administrative remedies. The court must examine whether (1) such remedies were in fact available to the inmate; (2) the defendants may have forfeited the defense by failing to preserve it; and (3) the defendants' own actions inhibited the prisoner from exhausting available remedies and thus estop defendants from asserting plaintiff's failure to exhaust. *See id.* at 686. Even if administrative remedies are available and defendants are not estopped from invoking non-exhaustion, but plaintiff still failed to exhaust, the court nonetheless should consider "whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'" *Id.* (*quoting Giano,* 380 F.3d at 670).

Here, it is undisputed that the established administrative remedies of the IGRC were available to Hamlett at Rikers Island. *See* Guerrant Dec. (*citing* New York City Department of Corrections, Directive Concerning Inmate Grievance Resolution Program) (citation omitted). The procedure consists of five successive steps. Hamlett availed himself of only the first step by filing a grievance that, on its form, requested assistance of prison staff in filling out the complaint. Hamlett refused to sign the form and continue with the process. Though Hamlett asserts that Guerrant did not draft the form to his satisfaction, and assuming Hamlett's account of his refusal to sign the form is credited, he nonetheless has presented no special cir-

cumstances suggesting that he was prevented by Defendants from pursuing the grievance to completion, or justifying his failure to do so.

The form he was given to review and sign indicates that if the grievance was not resolved, the inmate is entitled to a hearing by the IGRC. It contains a line to check if such a hearing is requested. Hamlett did not mark the box demanding a hearing or sign the line affirming his request. Nor did he explain why he did not subsequently fill out his own form or re-file the grievance if he was not satisfied with the assistance he had obtained from Guerrant. Thus, Hamlett has failed to establish that he made reasonable effort to exhaust administrative procedures by repeated attempts that in some substantial way were inhibited or precluded by Defendants. *See Indelicato v. Suarez*, 207 F.Supp.2d 216, 219–20 (S.D.N.Y.2002). Under these circumstances, the Court finds Hamlett did not comply with the PLRA's exhaustion requirement, and thus that sufficient grounds exist to warrant granting Defendants' motion.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion for summary judgment (Docket No. 26) of defendants in this action for summary judgment dismissing the complaint of plaintiff Shawn Hamlett is GRANTED.

SO ORDERED.