**Chandrica CLARKE, Plaintiff,**

v.

**Delores THORNTON, Superintendent, et al., Defendants.**

**No. 07 Civ 3012.**

United States District Court, S.D. New York.

Oct. 9, 2007.

Chandrica Clarke, Albion, NY, Pro se.

## DECISION AND ORDER

VTCTOR MARRERO, District Judge.

Pro se plaintiff Chandrica Clarke ("Clarke") brought this action pursuant to

42 U.S.C. § 1983 (" § 1983") and other federal laws alleging violations of her constitutional and statutory rights during November and December 2006 while she was incarcerated at Taconic Correctional Facility ("Taconic") in New York State, where defendant Delores Thornton served as Superintendent and the other individual defendants were officers (collectively, "Defendants").

Clarke asserts four specific claims: 1) that she was deprived of outdoor activity; 2) that she was denied timely medical treatment and subjected to "sick call" in an open corridor· in violation of federal Health Insurance Portability and Accountability Act ("HIPAA") privacy standards; 3) that she was made to feel unsafe by the intermingling of general inmates with the protective custody inmates, of which she was one; and 4) that she was exposed to asbestos and other health and safety hazards in her cell. Clarke alleges that this treatment as a whole violated her Eighth Amendment right to be free from cruel and unusual punishment.

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Clarke failed (1) to exhaust all available administrative remedies, (2) to allege sufficient personal involvement by Defendants in causing the alleged injuries, and (3) to state appropriate grounds for relief. On August 24, 2007, the Court dismissed Clarke's complaint and indicated that it would set forth its ruling in a subsequent decision and order. For the reasons discussed below, Defendants' motion to dismiss Clarke's complaint is GRANTED.

## I. *BACKGROUND*[1]

For purposes of ruling on a motion to dismiss against a pro se plaintiff, the Court accepts the version of the facts and their related inferences in the manner most favorable to the plaintiff. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.2002) (*citing Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir.2001)).

Following a fight with another inmate, Clarke entered into voluntary protective custody at Taconic on November 22, 2006. Over the next six weeks, Clarke filed seven separate grievances on Forms 2131E in accordance with statutory grievance requirements. *See* New York Comp.Codes R. & Regs. ("NYCRR"), Dept. of Corr. Services, § 701.5 (2007). Clarke's grievances detailed the following complaints:

- November 23, 2006: denial of outdoor recreation;
- November 30, 2006: continued denial of outdoor recreation in conflict with doctor's orders;
- December 1, 2006: ongoing practice of medical evaluation held in public locations;
- December 6, 2006: continued denial of outdoor recreation and fear of personal safety owing to non-protective custody inmates wandering protective custody halls and commingling in showers;
- December 7, 2006: denial of hygienic bed linens;
- December 18, 2006: denial of medical attention for a painful rash and apparent asbestos exposure in her former cell; and
- December 21, 2006: continued denial of medical attention for a painful rash.

None of the seven grievance forms submitted by Clarke bear any marking indicating

---

that they were processed by the correctional facility.

Having received no response to any of her grievances, Clarke sent four subsequent letters. Clarke sent the first letter, dated December 7, 2006, to the Inmate Grievance Resolution Committee ("IGRC"). Clarke sent two additional letters, dated December 14, 2006—one to Superintendent Thorton and one to IGRC. Finally, she sent two more letters to the IGRC approximately one week later.

In response, Clarke received two form letters from Superintendent Thornton. The first acknowledged receipt of Clarke's December 14, 2006 letter; the second letter acknowledged receipt of a letter from Clarke, dated December 13, 2006.[2] Clarke was transferred to Bayview Correctional Facility on December 28, 2006. On January 8, 2007, she commenced the instant action.

After Clarke's filing of this action, she received a March 16, 2007 response from the Department of Correctional Services Assistant Commissioner Diane Van Buren ("Van Buren"), on behalf of Commissioner Brian Fischer. Van Buren's letter acknowledges receipt of a different letter, absent from the record, sent by Clarke to Commissioner Brian Fischer of the State of New York Department of Correctional Services ("DOCS"). Van Buren indicated that she forwarded one of Clarke's letters to prison officials for review. Van Buren further stated that several concerns raised by Clarke——including allegations of insufficient heating, sanitation, and personal safety——had been previously investigated and dismissed. The investigation apparently included "an interview with [Clarke], identified staff and other witnesses, as well as a review of the Protective Custody (PC) Unit logbook." (Letter from Assistant Commissioner Diane Van Buren to Chandrica Clarke, dated March 16, 2007 ("March Correspondence"), attached to Clarke Aff.) Van Buren found "no evidence to substantiate [Clarke's] allegations." (*Id.*) There are no further references to this investigation in the record.

## II. DISCUSSION

### A. STANDARD OF REVIEW

■■■ To survive dismissal, Clarke "must assert a cognizable claim and allege facts that, if true, would support such a claim." *Boddie v. Schnieder,* 105 F.3d 857, 860 (2d Cir.1997). Pro se complainants are entitled to some latitude in meeting these requirements, as they are held "to less stringent standards than formal pleadings drafted by lawyers." *Id. (quoting Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). However, even a pro se party cannot defeat summary judgment by "relying on the allegations in [the] complaint, conclusory statements, or mere assertions that the affidavits supporting the motion are not credible;" the burden to produce sufficient factual pleadings remains. *Hamlett v. Srivastava,* 496 F.Supp.2d 325, 328 (S.D.N.Y.2007) (*citing Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996)).

### B. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

#### 1. Procedure

■■■ DOCS maintains a three-tiered administrative review and appeals system for prisoner grievances. Under the Prison Litigation Reform Act of 1995 ("PLRA"), "no action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

---

**2.** This letter appears to be absent from the record.

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This administrative exhaustion requirement "[a]pplies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Ortiz v. McBride*, 380 F.3d 649, 656 (2d Cir.2004) (acknowledging the exhaustion requirement and applying it to an alleged due process violation).

A prisoner in the DOCS system must exhaust all three levels before bringing a § 1983 action in federal court. *See Porter*, 534 U.S. at 524, 122 S.Ct. 983. Under 7 NYCRR § 701.5, an inmate must first file a formal grievance or a written grievance, if forms are not available, with the IGRC. Next, the inmate may appeal the IGRC's decision to the prison superintendent. *See Hemphill v. New York*, 380 F.3d 680, 682 (2d Cir.2004). The inmate may appeal the superintendent's written decision to the Central Office Review Committee ("CORC"). See 7 NYCRR § 701.6. Only after the CORC has denied an appeal may the inmate bring the matter into federal court. *See id.*

Clarke argues that prison officials failed to follow their own statutorily mandated grievance procedure, rendering administrative remedies unavailable to her.[3] Clarke argues that, due to their non-compliance, she has exhausted the administra-

tive remedies that were functionally available to her. The Court next considers both parts of this argument in turn.

### 2. *Unavailability of Remedies*

The Court must first decide which remedies, if any, were rendered unavailable to Clarke. The Second Circuit, in *Hemphill*, has suggested three factors affecting the availability of administrative remedies: (1) whether the administrative appeals process was formally in place; (2) whether defendants forfeited the affirmative defense of failure to exhaust administrative remedies by failing to raise or preserve the issue; and (3) whether the defendants, through their own conduct, have forfeited this affirmative defense by preventing the inmate from exhausting administrative remedies. *See* 380 F.3d at 686. The Court must additionally consider whether "special circumstances" prevented the inmate from pursuing the proper appeals channels. *See Giano v. Goord*, 380 F.3d 670, 676 (2d Cir.2004). Such special circumstances have previously been found to include threats of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process. *See id.*

A correctional facility's failure to make forms or administrative opinions "available" to the prisoner does not relieve the inmate from this burden. The "reasonable efforts" standard still requires a serious effort by the prisoner to appeal through the proper statutory channels.

---

**3.** The record supports Clarke's allegation that prison officials did not fully comply with applicable procedures in responding to Clarke's requests for administrative grievance remedies. NYCRR places affirmative duties on state prisons to file an inmate's grievance form and submit it promptly for IGRC review; to conduct a full hearing within sixteen days of the grievance filing; to send the complainant a written IGRC verdict within two work-

ing days of reaching a decision, and to include reasonably clear instructions on how to appeal; and to transmit or render a decision on an appeal to the superintendent within seven days of its receipt. *See* 7 NYCRR § 701.5. The record in the instant case shows that prison officials failed to file Clarke's multiple grievances within applicable time limitations and to instruct her in the appeals process.

*See Indelicato v. Suarez,* 207 F.Supp.2d 216, 219 (S.D.N.Y.2002). Similarly, an inmate's refusal to take actions that could lead to a resolution of the dispute does not render the administrative process unavailable. *See Hamlett,* 496 F.Supp.2d at 325 (finding that a prisoner who refused to sign grievance form prepared on his behalf by prison official, on grounds that form misrepresented his claims, failed to exhaust administrative remedies and was barred from action in federal court).

The Second Circuit noted in *Hemphill* that "there might be a question of the availability of [administrative] remedies" when a prisoner's written appeal to the superintendent receives no response and there is "no indication that [the] grievance was ever recorded, as required by DOCS regulations." 380 F.3d. at 686–87 n. 6 (citing four opinions from other circuits holding that such non-response renders administrative processes unavailable). However, the *Hemphill* court explicitly refrained from deciding this matter.

■ District courts in this jurisdiction, however, recently reaffirmed that " 'even when an inmate files a grievance and receives no response, he must nevertheless exhaust all appeals before his grievance is considered exhausted.' " *George v. Morrison,* No. 06 Civ. 3188, 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007) (*quoting Bligen v. Griffen,* No. 06 Civ. 4400, 2007 WL 430427, at *2 (S.D.N.Y. Feb. 8, 2007)); *Williams v. City of New York,* No. 03 Civ. 5342, 2005 WL 2862007, at *10 (S.D.N.Y. Nov. 1, 2005); *see also Saunders v. Goord,* No. 98 Civ. 8501, 2002 WL 1751341, at *3 (S.D.N.Y. July 29, 2002) ("Even if the plaintiff did not receive responses directed towards some grievances, the plaintiff was required, at a minimum, to make reasonable attempts to appeal those grievances before bringing an action in federal court."). "Failure to exhaust [administrative remedies] is an absolute bar to an inmate's action in federal court." *Morrison,* 2007 WL 1686321, at *3. *But see Indelicato v. Suarez,* 207 F.Supp.2d 216 at 219 (relying on O'Connor for proposition that "[a]n inmate may defeat a motion to dismiss even if he has not technically exhausted his administrative remedies when he has made a 'reasonable attempt' to do so"); *O'Connor v. Featherston,* No. 01 Civ. 3251, 2002 WL 818085, at *2–3 (S.D.N.Y. April 29, 2002) (noting that allegations claiming that corrections officials' failure to file an inmate's grievances may defeat a motion to dismiss). Thus, even if prison officials failed to clearly and promptly respond to Clarke, she is still not relieved from her statutory burden to appeal through the three-tier process.

### 3. *Clarke's Efforts*

■ The record contains seven official grievance forms prepared by Clarke, two letters to Superintendent Thorton, and two letters to the IGRC,[4] by which she attempted to engender a response from corrections officials with respect to her grievances. (*See* Clarke Aff.) The March Correspondence from Van Buren detailed a more extensive response, in the form of interviews with Clarke, corrections staff, and other witnesses, from the correctional facility, although the record contains little

---

4. The motion to dismiss includes only one exhibit, an ambiguous document, allegedly from the CORC that indicates that Clarke did not appeal any of her grievances to CORC, This document, a one-line record with no accompanying explanation and no indication that it originates from the CORC, communicates very little to the Court about Clarke's grievances. DOCS has provided no record of correspondence, interviews, or other useful documentation. *See* 7 NYCRR § 701.5, 701.6. Rather, it is Clarke's submissions that provide the Court with a clearer picture of what transpired.

documentation of this effort. The communication from Van Buren, however, does suggest that Clarke's move to the Bayview Correctional Facility was prompted in part as a response to her grievances. (*See* March Correspondence, ¶ 4.) It appears that Clarke has satisfied the first two tiers of the administrative review—filing a formal grievance and appealing to the relevant prison superintendent. Thus, before pursuing the matter further in federal court, Clarke must complete the final step and appeal to CORC in order to exhaust all administrative remedies in this instance. *See Hemphill,* 380 F.3d at 682; 7 NYCRR § 701.6

## III. *SUMMARY*

Accordingly, all of Clarke's claims must be dismissed, pursuant to 42 U.S.C. § 1997e(a), because she failed to exhaust administrative remedies prior to bringing her action in federal court. Clarke failed to clear the final administrative hurdle of appealing her claim to the CORC and is therefore prevented from adjudicating her claim at this time.

Because any appeal to the CORC is now time-barred under 7 NYCRR 701.5(d)(1), the case must be dismissed with prejudice. *See Williams,* 2005 WL 2862007, at *4 (S.D.N.Y. Nov. 1, 2005).

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated August 24, 2007 is amended to incorporate the discussion above; and it is further

**ORDERED** that the motion to dismiss of defendants, Superintendent Delores Thorton, Lieutenant Burns, Sergeant Calander, Sergeant Kiblin, and Deputy Superintendent Rogers, dated June 29, 2007, is GRANTED; and it is further

**ORDERED** that the complaint of plaintiff Chandrica Clarke is DISMISSED in its entirety.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**